UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MARC VAN DEN HEUVEL,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No.  2:13-cv-2187 KJN PS<br><br><br>ORDER |

INTRODUCTION

In this case filed on October 21, 2013, plaintiff, who proceeds without counsel, seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  On February 18, 2014, the Commissioner filed an answer and lodged the administrative record.  (ECF Nos. 14, 15.)  Ultimately, on November 13, 2014, after receiving several extensions of time to file an opening motion for summary judgment, plaintiff filed a "Request for Courts [sic] Consideration," which the court liberally construed as a motion

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 6, 10.)

1

for summary judgment. (ECF No. 28; see also ECF No. 29.) Subsequently, on December 18, 2014, the Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (ECF No. 31.) Finally, on December 30, 2014, plaintiff filed a "Request for Jury Trial & Damages from Social Security Administration Costs for Duration for Survival [sic]," which the court liberally construes as a reply brief. (ECF No. 32.)[2]

After carefully considering the applicable law, the parties' briefing and submissions, and the administrative record, the court DENIES plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment, for the reasons outlined below.

BACKGROUND

Plaintiff was born on April 18, 1957, has a high school education with two years of college, is able to communicate in English, and previously worked as a cabinet maker and carpenter.[3] (Administrative Transcript ("AT") 18, 31, 172, 211, 213.) On February 8, 2011, plaintiff applied for DIB, alleging that his disability began on August 15, 2010, and that he was disabled primarily due to impairments of the lower back, lumbar muscle, and sciatic nerve resulting in chronic back pain. (AT 12, 76, 91, 172, 212.) On June 9, 2011, the Commissioner determined that plaintiff was not disabled. (AT 12, 92-95.) Upon plaintiff's request for reconsideration, that determination was affirmed on September 22, 2011. (AT 12, 100-05.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which ultimately took place on October 24, 2012, and at which both plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 12, 25-65.)

////

---

[2] The court denies plaintiff's requests for a jury trial and damages from the Commissioner, which are not available in an action seeking judicial review of the Commissioner's final decision denying disability benefits pursuant to 42 U.S.C. § 405(g).

[3] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts here. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

In a decision dated November 28, 2012, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from August 15, 2010, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 12-19.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 26, 2013. (AT 1-6.) Thereafter, plaintiff filed this action in federal district court on October 21, 2013, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

ISSUES PRESENTED

Apart from claiming entitlement to Social Security benefits, plaintiff's "Request for Courts [sic] Consideration," liberally construed as a motion for summary judgment, does not raise any specific legal issues for the court's review. However, whether or not required by applicable law, the court, given plaintiff's *pro se* status and the court's desire to resolve the action on the merits, conducts an independent review of the record to determine whether substantial evidence supports the Commissioner's findings at each material step of the five-step sequential evaluation process, outlined in greater detail below. Furthermore, because plaintiff also submitted additional medical evidence to this court, the court considers whether plaintiff is entitled to a remand under sentence six of 42 U.S.C. § 405(g) for administrative consideration of new medical evidence outside of the present administrative record.

LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

DISCUSSION

    Summary of the ALJ's Findings

    The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[4] As an initial matter, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2014. (AT 14.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since August 15, 2010, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ determined that plaintiff had the following severe impairments: obesity, degenerative disc disease of the lumbar spine with intermittent pain, bilateral shoulder tendinitis, and hypertension. (Id.) However, at step three, the

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 15.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and carry thirty pounds occasionally and ten pounds frequently, can sit for eight hours in an eight-hour day, can stand and walk for six hours in an eight-hour day, can occasionally climb ramps and stairs, cannot climb ladders, ropes or scaffolds, can occasionally balance, stoop, kneel, crouch and/or crawl, can occasionally reach overhead bilaterally.

(AT 16.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 18.)  Finally, at step five, the ALJ determined, based on the VE's testimony, that, considering plaintiff's age, education, work experience, and RFC, plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy.  (Id.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from August 15, 2010, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 19.)

Whether Substantial Evidence Supports the ALJ's Findings

As noted above, whether or not required by applicable law, the court here conducts an independent review of the present administrative record to determine whether substantial evidence supports the Commissioner's findings at each material step of the five-step sequential evaluation process.

*Step One*

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 15, 2010, plaintiff's alleged disability onset date.  (AT 14.)  Because the ALJ's step one finding was favorable to plaintiff, it was inconsequential to the ultimate non-

disability determination.

*Step Two*

At step two, the ALJ found that plaintiff had severe impairments – more specifically, obesity, degenerative disc disease of the lumbar spine with intermittent pain, bilateral shoulder tendinitis, and hypertension.  (AT 14.)  Because the ALJ's step two finding was favorable to plaintiff, it was likewise inconsequential to the ultimate non-disability determination.

*Step Three*

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 15.)

The claimant "bears the burden of proving that ... [h]e has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations."  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify...For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990).  A determination of medical equivalence must rest on objective medical evidence.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on medical evidence only."); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings…A generalized assertion of functional problems is not enough to establish disability at step three."); 20 C.F.R. § 404.1529(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria.  However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed

impairment.").

In this case, plaintiff points to no medical source that actually opined that plaintiff met or equaled the criteria of a particular Listing. Moreover, plaintiff does not articulate any plausible theory of how the specific criteria of a potentially applicable Listing were met or equaled based on the medical evidence of record. Therefore, the ALJ's determination at step three is supported by the record.

Even if a claimant does not receive a favorable finding at step three, disability under the Act may still be established at later steps. Before proceeding to step four and five, an ALJ must first assess a claimant's RFC.

*The ALJ's RFC Assessment*

In this case, plaintiff's treating providers did not furnish an assessment of plaintiff's physical or mental functional capacity. In formulating the physical component of the RFC, outlined above, the ALJ substantially relied on the opinion of consultative examiner Dr. Walter Miller, who interviewed and examined plaintiff on May 12, 2011, and opined that plaintiff could walk/stand for 6 hours per day; sit without restriction; lift/carry 30 pounds occasionally and 10 pounds frequently; occasionally bend and stoop; climb stairs, but not ladders or scaffolding; and could not reach overhead. (AT 286-88.) Because Dr. Miller personally examined plaintiff and made independent clinical findings, his opinion constitutes substantial evidence on which the ALJ was entitled to rely. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).[5] Additionally, Dr. Miller's opinion was actually more restrictive than the other medical opinions in the record

---

[5] The ALJ adopted all of Dr. Miller's assessed functional limitations, except for the limitation concerning no overhead reaching. However, Dr. Miller provided no clinical findings or rationale supporting a *complete* prohibition of overhead reaching. During his examination of plaintiff's shoulders, Dr. Miller found crepitus (crackling) and limited range of motion in plaintiff's left shoulder, but full range of motion in plaintiff's right shoulder. (AT 287.) Furthermore, Dr. Miller noted that plaintiff did his own grocery shopping, cooking, cleaning, bathing, and driving, and that plaintiff had worked doing some siding installation about 3 weeks prior to the examination. (AT 286.) Thus, while plaintiff undoubtedly had limitations associated with his shoulder impairment, the clinical findings and plaintiff's activities documented in Dr. Miller's report are more consistent with the ALJ's limitation to only *occasional* overhead reaching. See Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence.").

7

concerning plaintiff's physical functional capacity – the state agency physicians concluded that plaintiff was capable of performing medium work. (AT 70, 83.) Furthermore, the ALJ justifiably did not include any specific mental limitations into plaintiff's RFC, because a mental functional assessment by consultative examiner and licensed psychologist, Dr. Travis Owens, who personally interviewed and evaluated plaintiff on April 21, 2011, revealed at most mild impairment in some mental functioning domains. (AT 281-85.)

To the extent that plaintiff himself claimed to be more limited, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's credibility. See Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007); see also Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (observing that "the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...."). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

Here, the ALJ reasonably found that plaintiff's alleged functional limitations were inconsistent with the medical opinion evidence, as discussed above. (AT 16-17.) Additionally, objective imaging studies of plaintiff's back and shoulders largely indicated mild to moderate findings of a degenerative nature, which undermine plaintiff's allegations of impairment at a disabling level. (AT 14-15, 304, 327-28, 347-48.) Furthermore, as the ALJ noted, physical examinations conducted by plaintiff's treating providers generally rendered fairly benign findings. (AT 17; see, e.g., AT 278-80, 298-99, 316-17, 340-41.) Even though plaintiff was often noted to have high blood pressure, there was no evidence that his blood pressure resulted in functional limitations beyond the ALJ's RFC during the relevant period. Notably, plaintiff also

1   unsuccessfully solicited his primary treating provider to complete disability documentation on
2   several occasions.  (See AT 278 ["need to have LBP eval, 'county told me to have it evaluated so
3   I could get social security early'"]; AT 325 ["would like additional eval of back 'too help me get
4   social security early'"]; AT 333 ["'since I got turned down for social security my attorney wants
5   you to fill out these occupational health forms saying that I can't work any more …but eventually
6   I'd like to go back to work.'"].

7       The ALJ further pointed to inconsistencies between plaintiff's testimony, statements, and
8   conduct.  (AT 17.)  As the ALJ observed, despite claiming disability as of August 15, 2010,
9   plaintiff continued to seek employment and actually performed work after that date.  (Id.)  For
10  example, on May 3, 2011, plaintiff told his treating provider that he "got laid off from recent
11  carpentry job 'cause of some disagreements.'"  (AT 325.)  At the October 24, 2012 hearing,
12  plaintiff also testified regarding his recent efforts to find carpentry-type jobs, and stated that he
13  occasionally performed small jobs, such as deck repair, making small stairs, or making an
14  individual custom cabinet.  (AT 32-36.)  Interestingly, plaintiff indicated that he had been offered
15  a job as an appliance salesman with Home Depot in Sacramento, a job he believed he could have
16  done, but had to turn it down because of the commuting costs.  (AT 62-63.)  Additionally,
17  although plaintiff testified that he could only walk 100 yards before sitting down, he had actually
18  walked for 14 minutes during a stress echocardiogram, in the course of which plaintiff
19  experienced no chest pain, and after which his back was only "a little bit sore."  (AT 43-44, 335-
20  36.)  Based on that test, the cardiologist opined that plaintiff had a very high exercise capacity
21  with a low likelihood of ischemic heart disease.  (AT 336.)

22      Finally, plaintiff's daily activities were inconsistent with his allegations of disabling
23  symptoms and functional limitations.  For example, on April 21, 2011, plaintiff told consultative
24  psychologist Dr. Owens that plaintiff vacuums, dusts, cleans, mows the lawn, cooks, does
25  laundry, does the grocery shopping, likes to play guitar for recreation, and consumes about 7-10
26  beers a day.  (AT 281, 283.)  At the administrative hearing, plaintiff likewise testified that he did
27  his own cooking, cleaning, and grocery shopping, and indicated that, although he did not actually
28  do yard work where he then lived at his friend's place, he could probably mow the lawn, edge the

lawn, and trim bushes.  (AT 36-37, 46-47.)

To be sure, the record also contains some other evidence suggesting that plaintiff may have been more limited.  However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one").  As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible.  But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); see also Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997) ("the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that [the] claimant is not disabled.").

In sum, the court finds that the ALJ properly considered the medical evidence and plaintiff's own subjective testimony in formulating the RFC, and that the RFC is thus based on substantial evidence in the record as a whole.[6]

*Step Four*

At step four, the ALJ determined that plaintiff was unable to perform his past relevant work as a cabinet maker and carpenter.  (AT 18.)  Because the ALJ's step four finding was

---

[6] In his briefing, plaintiff also suggests that he did not have the financial resources or adequate insurance coverage to develop, and timely obtain, medical evidence for his claim.  However, in this case, the Commissioner obtained evaluations of both plaintiff's physical and mental functioning at no cost to plaintiff.  Additionally, plaintiff was represented by counsel at the administrative level, who could have requested further development of the record concerning specified medical issues, if warranted.  Instead, plaintiff's attorney declined the opportunity to submit additional medical records.  (AT 64.)

favorable to plaintiff, it was inconsequential to the ultimate non-disability determination.

*Step Five*

At step five, the ALJ found that, considering plaintiff's age, education, work experience, and RFC, plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. (AT 18.)

Here, the record does not reveal any material dispute concerning plaintiff's age, education, work experience, or skills acquired from work experience. Such skills included the ability to read and understand building/construction plans and blueprints; knowledge of tools, machines, and materials; and a proficiency at dealing with homeowners and other interpersonal skills. (AT 18, 59-60.) Furthermore, the ALJ's RFC was supported by substantial evidence for the reasons outlined above.

At the administrative hearing, the ALJ provided the VE with a hypothetical that encompassed plaintiff's age, education, work experience, and RFC. (AT 19, 54-57.) Based on that hypothetical, the VE testified that plaintiff could perform the following representative occupations: (1) general hardware sales clerk, with approximately 40,000 positions in California and 400,000 positions nationwide; (2) fast food worker, with approximately 280,000 positions in California and 2,000,000 positions nationwide; and (3) "cashier II," with approximately 100,000 positions in California and 1,000,000 positions nationwide. (AT 19, 54-60.)

"An ALJ may take administrative notice of any reliable job information, including information provided by a VE…A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). The VE's testimony here plainly demonstrates that the other work plaintiff could perform is available in significant numbers. See, e.g., Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 527-29 (9th Cir. 2014) (finding 2,500 jobs in California and 25,000 jobs nationally to be a significant number of jobs). Therefore, the ALJ's step five finding was supported by substantial evidence.

Having found plaintiff capable of performing other work at step five, the ALJ then justifiably determined that plaintiff had not been under a disability, as defined in the Act, from

August 15, 2010, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 19.)

New Evidence

The above analysis was based on the record evidence before the ALJ. However, as noted above, plaintiff also submitted additional medical evidence to this court.[7] As such, the court considers whether plaintiff is entitled, under applicable law, to a remand under sentence six of 42 U.S.C. § 405(g) for administrative consideration of new medical evidence outside of the present administrative record.

Sentence six of 42 U.S.C. § 405(g) provides, in part, that: "The court may…at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding…." 42 U.S.C. § 405(g). "Thus, a so-called 'sentence-six remand' may be ordered 'where new, material evidence is adduced that was for good cause not presented before the agency.'" Gibb v. Comm'r of Soc. Sec., 420 Fed. App'x 767, 768 n.1 (9th Cir. 2011) (quoting Shalala v. Schaefer, 509 U.S. 292, 297 n.2 (1993)).

"To be material under section 405(g), the new evidence must bear directly and substantially on the matter in dispute" and the claimant "must additionally demonstrate that there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001). Furthermore, the new evidence must relate to the relevant time period to be material. Sanchez v. Sec'y of Health & Human Servs., 812 F.2d 509, 511-12 (9th Cir. 1987) ("The new evidence indicates, at most, mental deterioration after the hearing, which would be material to a new application, but not probative of [the claimant's] condition at the hearing.").

---

[7] Plaintiff submitted additional medical evidence in multiple court filings. In a previous August 8, 2014 order, the court indicated that it would disregard evidence improperly submitted in filings preceding plaintiff's motion for summary judgment (ECF Nos. 7, 12, 16, and 18). (See ECF No. 19.) Nevertheless, in light of plaintiff's *pro se* status, and whether or not required by applicable law, the court exercised its discretion to review all new evidence submitted by plaintiff for purposes of determining whether a sentence six remand is warranted.

12

In this case, plaintiff has not shown that the new evidence is material for purposes of 42 U.S.C. § 405(g). The additional medical records, which include *inter alia* physical therapy referrals, blood pressure logs, prescriptions for high blood pressure and depression medication, and other medical notes, most significantly document that plaintiff underwent right rotator cuff surgery in July 2014 and suffered a stroke in August 2014. (See ECF Nos. 7, 12, 16, 18, 24, 28, 30, 32.) However, such records do not relate to the relevant period under review here, which extends from August 15, 2010, plaintiff's alleged disability onset date, to November 28, 2012, the date of the ALJ's decision. To be sure, plaintiff suffered from shoulder impairments and high blood pressure during the relevant period, but, as noted above, substantial evidence supports the ALJ's determination that those impairments, individually or in combination, were not disabling *at that time*. As such, the new medical evidence indicates, at most, deterioration of those impairments after the ALJ's decision. Such deterioration may well potentially be relevant to a new application for benefits, but it does not bear directly and substantially on the period under review in this case.

Accordingly, the court declines to remand the action pursuant to sentence six of 42 U.S.C. § 405(g).

V.     CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 28) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 31) is GRANTED.

3. Plaintiff's request for a jury trial and damages from the Commissioner (ECF No. 32) is DENIED.

4. Judgment is entered for the Commissioner.

////

////

5. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: February 5, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE